## OCCIDENTAL LIFE INS. CO. v. MONTGOMERY. (No. 8403.)

(Court of Civil Appeals of Texas. Dallas. Dec. 18, 1920.)

1. **Appeal and error ⟲733—Assignment of error that judgment is contrary to law held too general.**

Assignment of error that the judgment rendered "is contrary to law and evidence in this cause and is not supported by same but on the contrary was with plaintiff" *held* too general, failing to point out with any definiteness the error to which it is desired to direct the court's attention, under Vernon's Sayles' Ann. Civ. St. 1914, art. 1612, rules 23–26.

2. **Specific performance ⟲101—Purchaser denied possession provided for by contract entitled to specific performance.**

Where vendor breached contract requiring him to give purchaser possession, thereby excluding purchaser therefrom through a period of two or three years, purchaser was entitled to specific performance of the contract even if after such breach by vendor he had failed to make installment payments.

3. **Specific performance ⟲116—Allegations held not to support claim of forfeiture.**

Vendor's pleadings in action involving purchaser's right to specific performance, in which it alleged that it was unable to perform contract requiring it to give purchaser possession because of unlawful interference by third party, and that it desired to perform the contract, *held* not to support a claim of forfeiture and abandonment of or failure by purchaser to perform contract.

4. **Appeal and error ⟲301—Assignments of error not presented in motion for new trial not considered.**

Assignments of error contained in plaintiff in error's brief, but not presented to the trial court in the motion for a new trial, as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 1612, will not be considered by Court of Civil Appeals on writ of error.

Error from District Court, Rains County; William Pierson, Judge.

Consolidated actions by the Occidental Life Insurance Company against D. W. Ryan and wife, in which P. R. Montgomery intervened, and by P. R. Montgomery against the Occidental Life Insurance Company. To review judgment rendered, the Occidental Life Insurance Company brings error. Affirmed.

Read, Lowrance & Bates, of Dallas, for plaintiff in error.

Clark & Sweeton, of Greenville, for defendant in error.

---

⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

HAMILTON, J. Occidental Life Insurance Company seems to have held a deed of trust lien against certain land in Rains county, Tex., to secure a note executed by D. W. Ryan. The lien was foreclosed and the life insurance company bought the land at public sale under the deed of trust and received a trustee's deed thereto.

Subsequently, plaintiff in error, Occidental Life Insurance Company, made a written contract of conveyance of the land to P. R. Montgomery, which contract was in this language:

"This contract made this 1st day of August, 1916, by and between the Occidental Life Insurance Company, a corporation duly organized and incorporated under the laws of the state of New Mexico, party of the first part, and P. R. Montgomery, of Point, Tex., party of the second party, witnesseth:

"(1) Said party of the first part agrees to sell to said party of the second part the following described real estate, to wit:

"First tract: Part of the E. W. Tollett survey. Beginning at a point on the S. B. line of said survey 1,000 vrs. west of the S. E. corner thereof, the same being the S. E. corner of the John Stephens 320-acre tract, thence north 687.3 vrs., thence west 328.5 vrs., thence south 687.3 vrs., thence east 328.5 vrs. to the beginning, containing 40 acres of land.

"Second tract: Part of the E. W. Tollett survey. Beginning at the S. W. corner of above-described tract, same being the S. E. corner of the Mooring 120-acre tract, thence north 521⅓ vrs., thence west 325 vrs., thence south 521⅓ vrs., thence east 325 vrs. to the beginning, containing 30 acres of land.

"Third tract: Part of the W. D. Legatt survey. Beginning at the N. E. corner of said survey, thence west 653.3 vrs., thence south to Lake fork of Sabine river, thence down Lake fork with its meanders to the E. B. line of said survey, thence north with E. B. line of said survey to the place of beginning, containing approximately 128 acres of land.

"(2) Said party of the second part agrees to pay for said real estate the sum of four thousand dollars ($4,000.00) as follows: Four hundred dollars ($400.00) in cash, the receipt of which is hereby acknowledged, and four hundred dollars ($400.00) on the 1st day of February, 1919, and four hundred dollars ($400.00) on the 1st day of February each subsequent year thereafter, until the full amount of the purchase price of four thousand dollars ($4,000.00) has been paid, together with interest at the rate of six per cent. (6%) per annum upon the deferred payments from the 1st day of August, 1916, payable semi-annually on the 1st days of February and August of each year, the first payment of interest being due and payable February 1, 1917.

"(3) It is agreed and understood that the said party of the second part may make additional payments at any time, and that interest upon such payment shall cease at the time said payment is made, but that time is the essence of this contract, and if the said party of the second part shall fail to make said payments of principal and interest as hereinbefore provided, or shall fail to pay all taxes accruing against said property as hereinafter provided, and shall remain in default for any such payment after 30 days' notice has been given of such default, then the whole principal sum and interest shall immediately become due and payable and this contract shall be considered as forfeited, and the amount paid thereon as liquidated damages, and the said party of the first part shall be entitled to immediate possession of said real estate.

"(4) It is agreed and understood that as long as any part of the purchase price remains unpaid, that the said party of the second part obligates himself to continuously cause said real estate to be farmed in a proper and first-class manner, and to see that the buildings and fences and other improvements on said real estate are properly maintained, and that upon his failure to do so the said party of the first part shall be entitled to go upon said real estate for the purpose of doing such work, and the cost of same shall be paid by said party of the second part within 30 days thereafter, and upon the failure of said second party to make such payments, this contract shall be voided as provided in paragraph 3 hereof.

"(5) It is understood and agreed that the party of the first part will pay all taxes that may have accrued against said property, up to and including taxes for 1916, but that the party of the second part shall pay all taxes that may accrue against said property subsequent thereto.

"(6) It is understood and agreed that whereas said real estate is now being farmed on shares by certain persons, that all of the obligations of the party of the first part in reference to said tenancy are hereby assumed by said party of the second part, and that any fruits and benefits of said tenancy heretofore belonging to said party of the first part are to hereafter belong to said party of the second part.

"(7) It is understood and agreed that the party of the second part can be given possession of said real estate immediately upon the signing of these presents, subject to the rights of the tenants above referred to, but that title to said real estate shall remain in said party of the first part until the full purchase price has been paid, at which time said party of the first part shall make and deliver to said party of the second part, his heirs or assigns, good and sufficient warranty deed to said real estate described above."

Plaintiff in error originally filed suit against D. W. Ryan in trespass to try title. Ryan's wife intervened in the suit, setting up certain rights on the ground that the property sued for constituted a homestead belonging to her and her husband at the time the cause of action arose and at the time suit was filed and previous to the time of both events had been such homestead, and that she had never lawfully executed any conveyance sufficient to divest title.

Thereafter Montgomery intervened in this suit, setting up the written contract of conveyance executed to him by plaintiff in error and seeking specific performance of this contract as well as the recovery of rents alleged to have accrued from the premises, and, in the alternative, suing for damages for

plaintiff in error's failure to perform the contract. This petition in intervention was filed April 22, 1918, the original suit against D. W. Ryan having been filed November 16, 1916.

Still later Montgomery sued D. W. Ryan and wife and Occidental Life Insurance Company jointly in an independent suit in Rains county. In this latter suit the plaintiff Montgomery, defendant in error here, pleaded the written contract declared upon in his petition of intervention, and sought specific performance and prayed for possession against all the other parties and for the value of the rentals which were alleged to have accrued since the contract of sale was executed by plaintiff in error.

Plaintiff in error, in answer to the defendant in error's pleadings in intervention, filed certain exceptions and entered a general denial. It also pleaded the following:

"For further answer, if further answer be required, this defendant admits that on or about August 1, 1916, it entered into a contract with the intervener agreeing to sell to him the lands described in plaintiff's petition on terms stated in said contract. The plaintiff denies that the intervener has complied with the obligations imposed upon him by said contract and plaintiff denies that he has refused to carry out said contract with intervener, and denies that the intervener has ever demanded specific performance of the same by the plaintiff, and this plaintiff alleges that said contract was made by it in good faith with the purposes and intention of performing the same in all of its terms and stipulations, and in the well-founded belief that the title of this plaintiff to the land in question was good and that plaintiff could deliver immediate possession of the property to the intervener, but the plaintiff after signing said contract was compelled to bring this suit against D. W. Ryan, a former owner of the property, to recover the possession of said property and to establish the plaintiff's title to the same, and for that purpose this suit was brought. This plaintiff is prosecuting this suit for the recovery of title and possession of said property in good faith and with reasonable diligence, and fully expects and intends to convey said property to the intervener in accordance with the contract made with him if it recover the title and possession of said property from the defendant D. W. Ryan in this suit. This plaintiff has never repudiated its contract with the intervener and has no intention of doing so, and now professes, as it has always heretofore done, its willingness to convey said property to the intervener at the termination of this suit if plaintiff recovers the title, provided the intervener complies with the terms and conditions imposed by said contract on him."

The same, in substance, was contained in the original suit against Ryan brought by plaintiff in error.

Plaintiff in error later filed an amended answer to the plea of intervention containing an admission that it had been unable to get possession of the land from Ryan, and that when it discovered its inability to make title and deliver possession to Montgomery, and that suit was necessary to establish title and possession against Ryan, it offered to return to Montgomery the $400 payment made by him under the contract with interest at the legal rate, and alleged that it still desired to do this. Substantially the same statement appeared in its answer to Montgomery's independent suit.

Before trial the two suits were consolidated under the name and number of that originally instituted by plaintiff in error.

A trial before a jury resulted in an instructed verdict in favor of plaintiff in error against Ryan and wife for title and possession of the land and in favor of Montgomery against plaintiff in error and Ryan and wife for title and possession thereof. Judgment was entered in favor of plaintiff in error against Ryan and Mrs. Ryan for title and possession and also in favor of Montgomery against plaintiff in error and Ryan and wife and also for specific performance of the contract of sale.

The amount of rents was determined by agreement of all parties, and this feature was not submitted to the jury, but was by agreement left to the trial judge for his disposition, and he entered judgment disposing of the recovery of rents.

The first assignment of error is as follows:

"The judgment rendered against the plaintiff in favor of the said intervener, P. R. Montgomery, awarding said intervener the land in controversy, is contrary to law and evidence in this cause, and is not supported by same, but, on the contrary, was with plaintiff."

[1] This assignment of error we consider to be clearly violative of the rules of this court because it is too general and fails to point out with any definiteness the error to which it is desired to direct the court's attention. Article 1612, Sayles' Rev. Civ. Statutes; Scanlon v. Railway Co., 45 Tex. Civ. App. 345, 100 S. W. 983; Branch v. Simons, 48 S. W. 41.

While the court can with poor grace require compliance on the part of others with rules which it disregards itself, we have nevertheless decided to consider briefly the point raised in argument by counsel in connection with this assignment of error, because counsel insists that the decision of this court in Carter v. Smith, 184 S. W. 244, conclusively determines this case.

We are unable to agree with counsel on this proposition, because we do not construe the terms of the contract relied upon in that case to have the effect of those in the contract here involved.

An examination of that case reveals the existence of a contract capable of being construed to an entirely different effect from what the contract here considered will bear.

There the contract provided exclusively for the forfeiture of $500 deposited in bank by the purchaser as full penalty for his failure to ·perform the contract. He had the clear choice either of performance and avoiding thereby the forfeiture, or of forfeiture and avoiding thereby performance. He pursued the latter course, and thus the contract was discharged and its binding force absolved. Nothing remained upon which· to base specific performance. The terms of the' contract itself, applied to the action of the vendee in forfeiting the penalty money, operated to finally end the contractual relations, so that none existed upon which to pitch a right of specific performance.

Here the contract provides that, if the purchaser shall remain in default as to deferred payments and as to taxes during 30 days after notice of such default, "then the whole principal sum and interest shall immediately become due and payable and this contract shall be considered as forfeited and the amount paid thereon as liquidated damages, and the said party of the first part shall be entitled to immediate· possession of said real estate."

It will be observed that section 7 of the contract stipulates that Montgomery should have immediate possession, subject only to the rights of tenants, and, further, that the title should remain in plaintiff in error until the full purchase price should be paid, when a warranty deed conveying fee-simple title should be executed. This reservation of title was, of course, to secure the payments of all sums to accrue under the contract.

A careful reading of the foregoing provisions in the contract, as copied in this opinion, is sufficient, we believe, to reveal the fact of the distinctiveness of its material features as compared to those in the Carter v. Smith Case, and to set it apart from the class of contracts mentioned in Redwine v. Hudman, 104 Tex.·21, 133 S. W. 426.

[2] Furthermore, plaintiff in error, the proof shows, did not perform the feature of the contract relating to giving Montgomery possession, but positively breached it, after he had paid the initial payment and probably some interest. This breach on its part, caused by Ryan's claim and possession, excluded Montgomery from the use, enjoyment, and possession of the land through a period of two or three years.

Besides, even if by any possible construction forfeiture could be claimed by plaintiff in error under the provisions of the instrument, certainly as an essential precedent to enforcing it, there must appear to have been given to Montgomery the 30 days' notice the contract provides for, and the duty was upon plaintiff in error to show that it had complied with that requirement. The record fails to show that the notice was given, and in the absence of such showing, under the

226 S.W.—48

pleadings and evidence in this case, we cannot presume it was given.

[3] We call attention to the pleadings of plaintiff in error. They do not support a claim of forfeiture of penalty and abandonment of or failure by Montgomery to perform the contract under the provisions of the section of the contract relied upon by plaintiff in error.

It pleaded in the original suit against Ryan its inability to go on with its contract with Montgomery because of Ryan's unlawful interference, and stated its desire to perform the contract with Montgomery and alleged that its failure to collect the payments then due was because of Ryan's acts. It pleaded to the same effect in the contest with Montgomery and finally went to trial with him upon an answer to his suit in which it admitted its inability to deliver to him title and possession, because of Ryan's trespass, and tendered back to him the $400 initial payment.

We are clearly of the opinion that this case is not ruled by the case of Carter v. Smith, and that plaintiff in error cannot rely upon it to support his first assignment of error. Stewart v. Griffith, 217 U. S. 323, 30 Sup. Ct. 528, 54 L. Ed. 782, 19 Ann. Cas. 639; Fuersteneck v. Clark et al., 195 S. W. 294; Phœnix Ins. Co. v. Continental Ins. Co., 87 N. Y. 400; Henderson & Grant v. Gilbert, 171 S. W. 305; Kittering v. Eastlack et ux., 130 Iowa, 498, 107 N. W. 177, 8 Am. Ann. Cas. 357.

The second assignment of error is as follows:

"The judgment entered in said cause undertakes to stipulate the methods to be used in carrying out the contract alleged to have been entered into by and between the plaintiff herein and the intervener, P. R. Montgomery, which attempted action and instruction is not warranted by law and is not supported by the facts and evidence in this case."

The sixth assignment of error is as follows:

"The award of rents to said intervener, Montgomery, is not supported by the law and evidence in this cause, but same is overwhelmingly in favor of plaintiff that it should recover said rents."

We think neither of these assignments of error is in compliance with the rules of the court, because they are too general and fail to direct the attention of the court specifically to the distinct grounds of error plaintiff in error relies upon. Hence we cannot consider them. Article 1612, Rev. Civ. Stats.; rules 23, 24, 25, and 26, Texas Courts of Civil Appeals (142 S. W. xii); Scanlon v. Railway Co., 45 Tex. Civ. App. 345, 100 S. W. 983. Numerous times the courts have declared that such assignments of error do not meet the requirements of the rules and for that reason will not be considered.

[4] The third, fourth, and fifth assignments of error contained in plaintiff in error's brief were not presented to the trial court in the motion for a new trial, as required by the statute, and for this reason we cannot consider them. Article 1612, Rev. Civ. Stats.; Railway Co. v. Gray, 154 S. W. 229; Thompson v. Howard, 154 S. W. 1065.

There is no error of law apparent upon the record, and the judgment of the court below is affirmed.

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes